U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 19 2012

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CYNDRA L. HENRY, § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:11-CV-00710-A |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISIONER OF SOCIAL SECURITY, § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Plaintiff Cyndra L. Henry ("Henry") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA"). On July 8, 2004,[1] Henry protectively applied for disability insurance benefits ("DIB"), alleging that her disability began on January 24, 2003.[2] (Tr. 17, 42–43, 215–17.) Her application was denied initially and on

---

[1] The application was actually filed on July 16, 2004. (Tr. 42–43, 215–19.)

[2] Henry previously filed an application for disability insurance benefits in 2001, which was denied by an ALJ on January 23, 2003, and the Appeals Council affirmed this denial in 2004. (Tr. 17.) The ALJ did not find any reason to reopen or otherwise reconsider the prior determination. (Tr. 17) Thus, Henry's alleged onset of disability date

1

reconsideration, and Henry requested a hearing before an administrative law judge ("ALJ"). (Tr. 17, 86, 88–92, 94–98.) On February 15, 2006, an ALJ held a hearing on Henry's Title II application, and, on June 7, 2006, issued an unfavorable decision. (Tr. 17, 44–52, 1011–37.) On September 29, 2006, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (Tr. 17, 53–57.) The ALJ held another hearing and issued another unfavorable decision on January 26, 2007. (Tr. 17, 58–68.) The Appeals Council once again vacated the ALJ's decision on May 24, 2007 and remanded the case to a different ALJ for further proceedings. (Tr. 17, 136–39.) That ALJ also held a hearing and issued an unfavorable decision on December 17, 2007. (Tr. 17, 71–81.) The Appeals Council vacated this decision as well on October 20, 2009 and remanded the case for further proceedings. (Tr. 17, 178–81.) On June 3, 2010, a supplemental hearing was held, and, on June 29, 2010, the ALJ issued another decision finding that Henry was not disabled. (Tr. 14–29.) Henry filed a written request for review, and the Appeals Council denied her request for review on August 9, 2011, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 9–12.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions govern disability benefits. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful

---

was January 24, 2003, the day after the previous unfavorable decision by the ALJ. (Plaintiff's Brief ("Pl.'s Br.") at 2 n.1; *see* Tr. 17–18.) In addition, based on her new onset date, the date Henry was last insured was calculated as June 30, 2003. (Tr. 17–18.)

2

activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Henry presents the following issues to the Court:

A. Whether the ALJ properly evaluated the medical opinion evidence from Henry's treating sources; and

B. Whether the ALJ properly considered all of Henry's physical and mental impairments in evaluating her residual functional capacity ("RFC").

### C. ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his June 29, 2010 decision, stated that Henry had not engaged in any substantial gainful activity from January 24, 2003, the alleged onset date for her disability, to June 30, 2003, the date on which Henry was last inured for disability benefits under Title II. (Tr. 18.) He further found that Henry had several "severe" impairments: (1) degenerative disk disease, (2) degenerative joint disease, (3) Achilles tendonitis with calcaneal spurs bilaterally, (4) obesity, and (5) diagnosed fibromyalgia. (Tr. 18) The ALJ also determined that Henry had additional impairments that were not "severe" because they would not interfere with her ability to work: (1) glaucoma, (2) asthma, (3) angina, (4) diverticulosis, (5) left ganglion cyst, (6) goiter, and (7) mild obstructive pulmonary disease. (Tr. 22–23.) Next, the ALJ held that none of Henry's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 18–24.) As to Henry's RFC, the ALJ found that during the relevant time period Henry could perform "sedentary work[3] that was not highly complex and did

---

[3] Sedentary work is defined as follows:

not entail working overhead with the dominant arm." (Tr. 26 (footnote added).) The ALJ further stated:

> I have ... limited the claimant to sitting for 6 hours and to standing/walking for 2 hours in an 8-hour work day, to lifting/carrying up to 10 pounds occasionally and less than that frequently, and no overhead reaching with the dominant (right) arm. I have further considered the effects of her clear preoccupation with the perception of pain and disability in finding that the claimant was unable to perform highly complex work during the pertinent period of time. However, I further conclude that she had no additional limitations as a result of her medically determinable impairments through June 30, 2003.

(Tr. 27.)

The ALJ opined, based on his RFC assessment, that Henry was not able to perform her past relevant work. (Tr. 27.) The ALJ found, however, that Henry was able to perform a number of jobs that existed in significant numbers in the national economy during the time period at issue. Thus, she was not disabled. (Tr. 28–29.)

## D. DISCUSSION

### A. Consideration of Treating Sources

Henry first claims, in essence, that the ALJ erred in rejecting the opinions of Caroline Woodland, D.O. ("Woodland") and Peter Cornell, M.D. ("Cornell"), two of her treating physicians, without applying the required factors in 20 C.F.R. § 404.1527(c) and without good cause. (Plaintiff's Brief ("Pl.'s Br.") at 10–14.) Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v.*

---

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

5

*Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 404.1527, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[4]

---

[4] As noted above, pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's

Henry primarily contends that the ALJ did not give proper weight to two RFC questionnaires filled out by two of her treating physicians. (Pl.'s Br. at 10–14.) The first questionnaire was filled out by Henry's primary care physician, Dr. Woodland, on December 6, 2002. (Tr. 374–80.) In this questionnaire, Dr. Woodland opined that Henry could not sit for more than ten to fifteen minutes at a time, could walk one block without needing rest or experiencing severe pain, could stand for no more than five minutes at one time, and needed to take breaks to walk every thirty minutes for five minutes at a time (Tr. 376–77.) Dr. Woodland also noted that Henry could stand and walk for less than two hours in an eight-hour work day, sit for about two hours in an eight-hour work day, rarely lift ten pounds and only occasionally lift less than ten pounds. (Tr. 377–78.) Finally, Dr. Woodland posited that Henry (1) was "incapable of even 'low stress jobs,'" (2) would need unscheduled breaks every thirty to sixty minutes during an eight-hour work day, (3) had to elevate her legs to knee level when sitting for prolonged periods for fifty percent of an eight-hour work day, and (4) would miss more than four days a month as a result of her impairments. (Tr. 376–79.) Dr. Woodland also noted that Henry did not require a cane or other assistive device while engaging in occasional standing or walking. (Tr. 378.)

The ALJ, contrary to Henry's assertion, thoroughly discussed Dr. Woodland's treatment records that were *relevant* to the ALJ's decision. The ALJ, however, disregarded any records that indicated Henry was "disabled" that were made by treating sources prior to the relevant time period from January 24, 2003 to June 30, 2003, since Henry was adjudicated not to be disabled

---

decision in Newton is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

prior to January 24, 2003 in a previous decision that is not at issue here.[5] (Tr. 21.) The ALJ recognized that these records, which would include Dr. Woodland's December 6, 2002 RFC questionnaire, were irrelevant, since they would have been considered in the previous application for disability.[6] (Tr. 21.) *See* 20 C.F.R. §§ 404.981, 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding

---

[5] The Court notes that as to this argument, Henry also states:

> Contrary to the opinion of the ALJ, the Appeals Council has specifically ruled that the opinion of Dr. Woodland is relevant to the issue of disability during the time period under consideration. The Appeals Council remanded this case several times with specific instructions to the ALJ to consider Dr. Woodland's opinion. Thus, the Appeals Council specifically ordered that the opinion was to be considered. Here, the ALJ refused to consider the opinion at all, dismissing it as not pertinent to the time period at issue. This is error.

(Pl.'s Br. at 13.) The Court disagrees with Plaintiff's assertion that, in essence, the Appeals Council instructed the ALJ that Dr. Woodland's December 6, 2002 RFC questionnaire could not be dismissed as not pertinent to the time period at issue.

The Appeals Council, in its September 29, 2006 order of remand, stated that the "hearing decision does not contain an adequate evaluation or explanation for rejecting the treating and examining source opinions in Exhibits B-5F [Dr. Woodland's RFC questionnaire] and B-9F [Dr. Cornell's RFC questionnaire]." (Tr. 55.) In its order of remand dated May 24, 2007, the Appeals Council stated:

> The hearing decision did not set forth a complete explanation for rejecting the treating source opinions in Exhibits B5F and B9F. Dr. Woodland opined that the claimant was not capable of performing low stress jobs. Dr. Cornell opined that the claimant's emotional factors contribute to her symptoms and functional limitations. Further clarification on the weight, if any, given to the treating source opinions is warranted.

(Tr. 137 (internal citations omitted).) In its most recent order of remand dated October 20, 2009, however, the Appeals Council did not even specifically mention the opinions of Drs. Woodland and Cornell. Instead, the Appeals Council directed the ALJ to give "further consideration to the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 . . ., and explain the weight given to such opinion evidence." (Tr. at 180.) The Appeals Council did not instruct the ALJ that he had to find Dr. Woodland's RFC questionnaire as relevant to the time period but rather that he must consider <u>all</u> treating and nontreating source opinions and explain his reasons for accepting or rejecting such opinions.

[6] Specifically, the ALJ stated:

> The record does not reflect additional diagnoses or treatment during the relevant period between January 24, 2003 and June 30, 2003. There are multiple opinions rendered by various treating sources prior to January 23 indicating that the claimant was "disabled," but these are not relevant to consideration of the claimant's current application as a judge previously found that she was not disabled during the period of time in which the opinions were rendered.

(Tr. at 21.) Contrary to Plaintiff's arguments, while the ALJ did not refer specifically to Dr. Woodland's December 6, 2002 RFC questionnaire, it is clear that such questionnaire is included as one of the "multiple opinions rendered by [a] treating source[] prior to January 23[, 2003]." (Tr. at 21.) *See, e.g.*, Pl.'s Reply at 2-3.

8

unless you or another party file an action in Federal district court, or the decision is revised."); 20 C.F.R. § 404.987, 416.1487; *see also Cutrer v. Shalala*, No. 93-2478, 1994 WL 706614, at *5 (E.D. La. Aug. 24, 1994) ("Plaintiff did not seek further review of [the prior] administrative decision and, therefore, the doctrine of *res judicata* bars relitigation of plaintiff's disability claim through January 17, 1989[, the date on which Plaintiff's previous disability applications were denied on the administrative level].") Moreover, the ALJ properly considered treatment records from Dr. Woodland that served to identify Henry's impairments and any limitations proposed by Dr. Woodland. (Tr. 19–22.) The ALJ, however, simply chose not to consider those records that made the conclusory assertions that Henry was disabled and could not work because such determinations are to be made by the ALJ. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also Frank*, 326 F.3d at 620 ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner.") (citation omitted).

Furthermore, the Court concludes that the ALJ did properly evaluate Dr. Woodland's relevant opinions using the factors set forth in 20 C.F.R. § 404.1527(c). As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Henry and Dr. Woodland, the ALJ examined Henry's treatment history with Dr. Woodland, noted that Dr. Woodland was Henry's primary treating source, and found that Henry was affected by many of the impairments diagnosed by Dr. Woodland during the relevant time period, including asthma, angina, and diverticulosis. (Tr. 18–22.) *See* 20 C.F.R. § 404.1527(c)(1)–(2). As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of physician's opinion as well as any other factors which "tend to support or contradict the opinion," the ALJ

also noted the inconsistencies in Dr. Woodland's treatment records with other medical evidence in the record.[7] *See* 20 C.F.R. § 404.1527(c)(3)–(4), (6). For example, while the record indicates that Henry did on occasion use a cane, Dr. Woodland never prescribed one to her and even noted that a cane was not necessary. (Tr. 20.) The ALJ also noted that Henry told Dr. Woodland in February 2003 that she was taking a trip to Scotland to spread her mother's ashes and vacation. (Tr. 20, 404.) During this same visit, Dr. Woodland indicated that, although Henry was experiencing some shoulder and hip pain as well as chest pain, Henry's electrocardiogram ("EKG") test was normal, and Dr. Woodland did not advise Henry not to travel. (Tr. 20, 404–05.)

Ultimately, in evaluating Dr. Woodland's opinions, the ALJ provided in the RFC for the limitations suggested by Dr. Woodland that were supported by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 1527(c); *Martinez*, 64 F.3d at 176; *Bowman*, 706 F.2d at 568. The ALJ addressed these restrictions by limiting Henry to sedentary, non-complex work with limited overhead reaching with the dominant arm, indicating that he fully considered Dr. Woodland's treatment records in making his determination. (Tr. 18–22, 27.)

The second questionnaire was completed by Henry's podiatrist, Dr. Cornell, on February 16, 2004.[8] (Tr. 468–71.) Dr. Cornell opined that Henry could sit or stand no more than fifteen minutes at one time and could also sit or stand/walk less than two hours total in an eight-hour work day. (Tr. 469–70.) Notably, however, Dr. Cornell also indicated that Henry needed to walk every fifteen minutes in an eight-hour work day for ten minutes at a time. (Tr. 470.) Dr.

---

[7] Under factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). *See also Newton*, 209 F.3d at 455. Factor five does not apply here because Dr. Woodland is a primary care physician and not a specialist. Thus, her opinion is entitled to no additional weight under this factor.

[8] The ALJ stated that the questionnaire was completed in August 2004, but the date on the form is actually February 16, 2004. (Tr. 21, 468.)

Cornell opined that Henry could occasionally lift ten pounds or less, would need to take unscheduled breaks of thirty minutes in duration during an eight-hour work day, and would need to elevate her legs above her heart with prolonged sitting and for thirty minutes twice a day if engaged in a sedentary job. (Tr. 470.) Dr. Cornell also stated that Henry would miss more than four days a month due to her impairments. (Tr. 471.) Dr. Cornell further indicated that he thought Henry did not need a cane or other assistive device to engage in occasional standing or walking, and he thought she was capable of handling moderate work stress. (Tr. 469–70.)

As to Dr. Cornell's RFC questionnaire, the ALJ expressly afforded it little weight. (Tr. 21–22.) Contrary to Henry's assertion, however, the ALJ properly provided reasons for disregarding Dr. Cornell's opinion after reviewing Dr. Cornell's treatment records. Although the ALJ's review of the factors set forth in 20 C.F.R. § 404.1527(c) could have been clearer, it is apparent that the ALJ did consider all factors before rejecting Dr. Cornell's RFC questionnaire. As to factors one, two, and five, the ALJ acknowledged that Dr. Cornell was a podiatrist that only treated Henry for her foot pain, and fully reviewed Dr. Cornell's treatment records. (Tr. 21–22, 468.) As to factors three, four, and six, the ALJ noted that Dr. Cornell, in the RFC questionnaire, only listed one specific symptom for which he was treating Henry, "pain in both heels while walking," and that such a symptom did not suggest any limitation as to sitting even though Dr. Cornell stated that he thought Henry could sit for no more than fifteen minutes at one time. (Tr. 22, 468, 470.) The ALJ also noted that Dr. Cornell's questionnaire was internally inconsistent, as Dr. Cornell opined that Henry would need to walk around for ten minutes every fifteen minutes while also concluding that she could stand or walk for less than two hours per day. (Tr. 22, 470.) The ALJ stated that Dr. Cornell also never prescribed use of a cane to Henry and noted that Henry had no need for a cane or assistive device when engaging in occasional

standing or walking. (Tr. 21–22, 470.) Finally, Cornell's treatment records indicate that Henry was planning to take a trip out of town and would do a "great deal" of walking during that trip, which he did not advise against. (Tr. 19–20, 383.) *See* Defendant's Brief ("Def.'s Br.") at 9 n.4.

The ALJ properly weighed the evidence before determining what weight to give to Dr. Cornell's opinion, and after considering Henry's treatment history with Dr. Cornell and Dr. Cornell's lack of knowledge of Social Security disability programs, the ALJ acted within his discretion to afford Dr. Cornell's opinion little weight, citing to, *inter alia*, 20 C.F.R. § 404.1527. (Tr. 21–22.) *See Leggett*, 67 F.3d at 566 ("Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'") (quoting *Greenspan*, 38 F.3d at 237). Because the ALJ did properly consider the treatment records and opinions of both Drs. Woodland and Cornell, the Court concludes that the ALJ did not err. Thus, remand is not required.

### B. Consideration of Physical and Mental Impairments

Henry contends that the ALJ failed to consider all of her non-severe physical impairments when determining her RFC. (Pl.'s Br. at 14–16.) The ALJ found that Henry had several impairments that were "not severe" during the time period at issue: (1) glaucoma, (2) asthma, (3) angina, (4) diverticulosis, (5) a ganglion cyst, (6) a goiter, and (7) pulmonary disease. (Tr. 22–23.) Henry also argues that the ALJ should have considered the impact of her fatigue on her ability to work, as well as the results of a magnetic resonance imaging ("MRI") test of Henry's brain performed by Shirley Molenich, M.D. ("Molenich") in June 2004. (Pl.'s Br. at 15–16.) Dr. Molenich noted that the brain MRI was "quite unusual" and revealed large subdural spaces and a question of focal areas of atrophy. (Pl.'s Br. at 15; *see* Tr. 472.) Henry asserts that

since the ALJ did not consider these impairments in evaluating her RFC, his determination of her RFC is not supported by substantial evidence. Pl.'s Br. at 14–15.

RFC is what an individual can still do despite her limitations.[9] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[10] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

Contrary to Henry's argument, the record reflects that the ALJ did consider Henry's glaucoma, asthma, angina, diverticulosis, ganglion cyst, goiter, and pulmonary disease and the impact these conditions may have had on Henry's ability to work during the relevant time period. The ALJ noted that Henry had 20/20 vision with correction as indicated by testing performed by Henry's treating eye doctor in 2003. (Tr. 18-19; *see* Tr. 313-51.) Henry fails to explain how her

---

[9] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[10] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

13

corrected vision would have a negative impact on her RFC. The ALJ also noted that Henry had been previously diagnosed with asthma but that the record failed to indicate that Henry showed any active symptoms of her asthma or required treatment during the relevant time period. (Tr. 19.) *See Fraga v. Bowen*, 810 F.2d 1296, 1303 (5th Cir. 1987) (indicating that the frequency of treatment may be properly considered in evaluating the severity of the alleged condition). The ALJ further recognized that Henry had a previous diagnosis of angina but noted that EKG testing conducted during the relevant time period and in 2004 was normal. (Tr. 19; *see* Tr. 403–04, 571.) The ALJ acknowledged that Henry had previously been diagnosed with diverticulosis but that such condition had been resolved by 2001, and she was completely asymptomatic during the relevant time period. (Tr. 19; *see* Tr. 374, 386–452.) *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) ("[S]ubjective complaints must be corroborated at least in part by objective medical testimony.") (citing *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988)).

Additionally, while the record shows that Henry did have a ganglion cyst surgically removed during the relevant time period and in January 2004 when the cyst recurred, the ALJ noted that the record contains no indication of any functional impairment this cyst may have caused, nor does Henry allege one. (Tr. 19, 454, 465; *see* Pl.'s Br. at 15.) Furthermore, the ALJ stated that Henry's goiter was found to be benign "and did not require further workup beyond an ultrasound and laboratory tests (which showed a normal thyroid uptake)." (Tr. 20; *see* Tr. 363, 397.) The ALJ also indicated that in September 2003, two months after Henry's insured status had expired, Henry was diagnosed with mild obstructive pulmonary disease. (Tr. 21; *see* Tr. 390–92.) However, as pointed out by the ALJ, the record does not indicate any upper respiratory problems or increased asthma symptoms during the relevant time period. (Tr. 21; *see* 390–92.)

The ALJ also did not err in failing to discuss Dr. Molenich's findings regarding Henry's MRI because the MRI was completed a full year after the relevant time period. (Tr. 472–73.) *See Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) ("[T]he reviewing court may not remand for the consideration of new evidence showing only that a disability commenced after the decision of the Secretary."). Additionally, Dr. Molenich did not require Henry to "followup" with her after the MRI was conducted. (Tr. 472–74.) The ALJ also acknowledged Henry's alleged fatigue and sleep issues, and he seems to account for any functional limitations caused by these conditions as well as any issues indicated in the brain MRI by limiting her to work that was not highly complex in nature. (Tr. 21, 24–26.) The ALJ was not, however, required to account for those conditions that do not affect Henry's ability to work when assessing her RFC, so he correctly disregarded the effects of Henry's glaucoma, asthma, angina, diverticulosis, ganglion cyst, goiter, and pulmonary disease, as none of these conditions affected Henry's ability to work during the relevant time period. *See* 20 C.F.R. § 404.1520(g); *Crowley*, 197 F.3d at 197–98. Since the ALJ properly accounted for all functional limitations caused by Henry's non-severe impairments affecting her during the relevant time period, the Court concludes that the ALJ did not err.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the

party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **August 2, 2012**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 19, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE